FILED IN CHAMBERS
U.S.D.C. Atlanta

JAN 23 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM ROGERS CARROLL,

    Plaintiff,

v.

HENRY COUNTY, GEORGIA, et al.,

    Defendants.

CIVIL ACTION
NO. 1:04-CV-79-RLV

O R D E R

In this action the plaintiff alleges that his civil rights were violated when he was arrested without probable cause, physically abused, and subsequently prosecuted. He has asserted claims under 42 U.S.C. § 1983 for false arrest/malicious prosecution (Count One) and deprivation of property without due process (Count Three); he also asserts a state law claim for false arrest/malicious prosecution (Count Five).[1] Pending before the court is the defendants' motion for summary judgment [Doc. No. 65].

At approximately 3:00 a.m. on February 21, 2001, a representative of Worldwide Investigative Services, Mike Kelley, knocked on the door of the house where William Rogers Carroll and Phyllis Winingder were living. He informed the residents that he was there to repossess a Mercedes SUV and that he had hooked up

---

[1] The plaintiff originally asserted claims for use of excessive force and battery, but those claims were subsequently dismissed by stipulation of the parties.

that vehicle to his tow truck.[2]  Mr. Carroll and Ms. Winingder objected, and Mr. Carroll got into another vehicle and was able to block the tow truck.  After words were exchanged, the Worldwide representative contacted his dispatcher, unhooked the SUV, and departed.

A police officer, Mike Reid, had been dispatched because of the altercation between Mr. Kelley, Mr. Carroll, and Ms. Winingder. Mr. Kelley had moved his vehicle to the subdivision entrance and waited there until Officer Reid appeared.  Mr. Kelley flagged down Officer Reed as Officer Reed approached the subdivision entrance. Officer Reed parked next to Mr. Kelley, partially blocking the exit from the subdivision.

About this time, according to Ms. Winingder's deposition, because she needed some milk in order to take some medicine, Mr. Carroll left their residence in the SUV.[3]  According to Officer Reid's testimony, when the SUV approached, he took his hands and waved for the SUV to pull over behind Mr. Kelley's truck.  However,

---

[2] Ms. Winingder testified that even though she had possession of the SUV, made the payments on the vehicle and considered it to be hers, the vehicle was actually titled in her mother's name. Payments on the vehicle note were due on the eighteenth of each month.  The December and January payments were not made on time, but, according to Ms. Winingder, she had mailed a check for those two payments during the early part of February.  That check had not been posted, and that is why the vehicle was being repossessed. .

[3] Mr. Kelley expressed doubts about this explanation, saying that it is not uncommon for a person to move a vehicle he is trying to repossess to another location so that he would not be able to locate it.  For purposes of the pending motion for summary judgment, Mr. Carroll's motive for driving the SUV away from his residence is irrelevant.

2

Mr. Carroll ignored these directions and, instead, moved over and exited the subdivision through the entrance lane. Mr. Carroll does not contend that Officer Reid did not motion for him to pull over. Rather, he contends that he did not see any such direction, perhaps because the lights of Officer Reid's patrol car were shining in his face.

When Mr. Carroll did not pull over, Officer Reid turned his car around and pursued Mr. Carroll. The pursuit lasted less than a quarter of a mile, and Mr. Carroll pulled over when he saw the blue lights flashing behind him.

Moments after Officer Reid had been dispatched to this scene, Officer Wayne Bender was also dispatched in order to provide backup. He arrived just as Mr. Carroll was leaving the subdivision, and he soon joined Officer Reid after Mr. Carroll had pulled over. There is disagreement about the conversations that took place between Officers Reid and Bender and Mr. Carroll. However, it is uncontested that Mr. Carroll was eventually arrested and charged with misdemeanor disorderly conduct and failure to obey an authorized person directing traffic. He was taken to the Henry County Jail and was released shortly after completing the booking process.

On May 21, 2001, Mr. Carroll filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. Mr. Carroll received a discharge on September 28, 2001. Shortly thereafter, on November 7, 2001, Mr. Carroll was

tried on the criminal charges arising from the February 21, 2001, incident and was found not guilty of those charges.

This action was filed on January 12, 2004. The defendants have moved for summary judgment on several grounds, including judicial estoppel (since he did not list the causes of action as assets when he filed for bankruptcy), qualified immunity, sovereign immunity, and official immunity,

## II LEGAL DISCUSSION

The doctrine of judicial estoppel generally prevents a party from asserting a claim in a legal proceeding that is inconsistent with the position taken by that party in an earlier proceeding. The purpose of the doctrine is to protect the integrity of the judicial process by "'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 1814 (2001), quoting United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1990).

The Supreme Court has noted several factors that the courts should consider but has also observed that these factors "do not establish inflexible prerequisites or an exhaustible formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751, 121 S.Ct. at 1815. Among the factors to be considered are (1) whether the party's later position was "clearly consistent" with its prior position, (2) whether the party

succeeded in persuading the earlier court to accept its position, and (3) whether the party seeking to assert an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

A debtor seeking relief under the Bankruptcy Code must disclose all assets to the Bankruptcy Court including lawsuits. Schedule B of the plaintiff's bankruptcy petition required him to list all "[c]ontingent or unliquidated claims of every nature." The question that this court must resolve is whether Mr. Carroll's claims fall under this category. The plaintiff argues that since his section 1983 claims had not accrued until he had been acquitted of the criminal charges, *see* Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), he had no duty to list that claim. The defendants argue that since Mr. Carroll knew that he had a potential claim under section 1983 he was under a duty to list that claim in his petition.

The Eleventh Circuit has stated, "A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002). However, this rather broad statement is circumscribed by two things. First, the court cites to 11 U.S.C. §§ 521(1), 541(a)(7). Section 521(1) says simply that a debtor must file "a schedule of assets and liabilities." Section 541(a)(7) provides that a debtor's estate consists of "[a]ny interest in property that the estate acquires after the

5

commencement of the case." Second, *Burnes* dealt with a chapter 13 debtor whose estate included property acquired post-petition. 11 U.S.C. § 1306(a). In a chapter 7 case, like Mr. Carroll's, property of the estate includes only property of the debtor as of the commencement of the case, with some exceptions not applicable here. See 11 U.S.C. § 541(a). *Burnes* thus recognizes the principle that a debtor must disclose claims that are property of the estate; it does not expand that duty to require a debtor to list assets that are not property of the estate. *Burnes* does not hold that potential claims which might accrue after the termination of the bankruptcy proceedings must be disclosed.[4]

The defendants also quote In re Baldwin, 307 B.R. 251, 265-66 (M.D. Ala. 2004), for the proposition that a debtor must disclose "all potential causes of actions." That case cites In re Coastal Plains, Inc., 179 F.3d 197 (5th Cir. 1999), to support that proposition. However, the Fifth Circuit quoted the following language from two bankruptcy courts: "*Any claim with potential must be disclosed*, even if it is contingent, dependent, or conditional." 179 F.3d at 208 (emphasis in original). There is a difference between a "potential claim" and a "claim with potential."

---

[4] The Eleventh Circuit used more appropriate language in Parker v. Wendy's International, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004): "Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, both tangible and intangible, vest in the bankruptcy estate upon the filing of a bankruptcy petition."

6

This court finds In re Witko, 374 F.3d 1040 (11th Cir. 2004), to be controlling. "Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not." *Id.* at 1042. In that case, the debtor filed a petition for voluntary bankruptcy on September 8, 1999. On January 13, 2000, in a separate proceeding regarding the debtor's divorce, a state trial court denied his request for alimony.[5] The debtor thereafter sued his divorce attorney for malpractice. The debtor's trustee sought a determination that the malpractice claim was estate property. The bankruptcy court held that the cause of action was property of the estate because "the better rule is that where pre-petition acts form part of a chain of events that lead to a post-petition 'redressable harm,' the cause of action is 'sufficiently rooted in the debtor's pre-petition past. . . .'" 374 F.3d at 1042. The district court affirmed.

The court of appeals reversed. The court noted that the debtor's malpractice cause of action "did not exist until his alimony action concluded with an adverse outcome that was proximately caused by his attorney's negligence." *Id.* at 1043. Because the debtor's malpractice action had not accrued until after he had filed his bankruptcy petition, that action was not part of his estate.

---

[5] Although the Eleventh Circuit does not state when the divorce proceedings began, this court assumes that they began before the bankruptcy petition was filed. Otherwise, the discussion by the Eleventh Circuit would be unnecessary.

In Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), the Supreme Court dealt with the issue of when a prisoner could file a section 1983 claim alleging unlawful arrest and conviction. The Court specifically held, "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90, 114 S.Ct. at 2374. Mr. Carroll had no section 1983 claim until the conclusion of his trial, when the jury found him not guilty of the charges against him. Because the jury verdict occurred after the filing of the bankruptcy petition, the plaintiff had no section 1983 claims at the time of commencement of his case. Since those claims were not property of his estate, 11 U.S.C. § 541(a), he had no duty to list them in his bankruptcy schedules. Consequently, he is not judicially estopped or otherwise barred from asserting the claims here.[6]

---

[6] The defendants based their argument on judicial estoppel, not standing. However, the Eleventh Circuit has suggested that when a debtor fails to list a claim in his schedule of assets, the proper analysis should focus on the debtor's (or trustee's) standing to assert that cause of action in a later lawsuit. *See* Parker v. Wendy's International, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) ("[B]ased on our analysis which follows, it is questionable as to whether judicial estoppel was correctly applied in *Burnes*. The more appropriate defense in the *Burnes* case was, instead, that the debtor lacked standing."). Whether this court uses the judicial estoppel approach or the standing approach, the result is the same--because Mr. Carroll's section 1983 claims had not accrued at the time he filed his petition in bankruptcy, he has standing to assert those claims now, and he is not barred by judicial estoppel.

The plaintiff's state law claims for false arrest and malicious prosecution are, likewise, not barred by judicial estoppel since those causes of action did not accrue until the termination of his criminal trial. "A malicious prosecution claim has six essential elements: (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage." Gibbs v. Looms, Fargo & Co., 259 Ga. App. 170, 172-73 (2003). The elements of a false arrest claim include: (1) an arrest under the process of law, (2) without probable cause, and (3) made maliciously. In such an action, it is also essential to show that the prosecution terminated in favor of the complaining party." Desmond v. Troncalli Mitsubishi, 243 Ga. App. 71, 74 (2000) (footnote omitted).

The court now turns to the merits of the plaintiff's section 1983 claims for false arrest/malicious prosecution and for deprivation of property without due process.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To receive qualified immunity, the public official must first prove that he was acting

within the scope of his discretionary authority when the allegedly wrongful acts occurred. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, it is clear and undisputed that Officer Reid and Officer Bender were acting within the course and scope of their discretionary authority when they arrested and took Mr. Carroll into custody. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id.

The United States Supreme Court has set forth a two part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002); see also Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard, 311 F.3d at 1346 quoting Saucier, 533 U.S. at 201. Thus, the court must first analyze whether Officer Reid and Officer Bender's conduct, taken in the light most favorable to the plaintiff, violated his constitutional rights.

In order to arrest, an officer must demonstrate probable cause for the arrest. However, in the context of qualified immunity from a section 1983 claim, the police officer need not have actual probable cause but need only to have "arguable probable cause." Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999). "Because only arguable probable cause is needed, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).

In the instant case, Officer Reid had arguable probable cause to arrest Mr. Carroll because Mr. Carroll failed to obey his direction to pull over. Mr. Carroll does not contend that Officer Reid did not motion for him to pull over; instead he states merely that he did not see Officer Reid motion for him to pull over. Thus, the testimony of Officer Reid and Mr. Kelley is uncontested on this point. Thus, there was arguable probable cause for the arrest.

Although the complaint alleges that Officers Reid and Bender arrested Mr. Carroll, the plaintiff's brief in opposition to the motion for summary judgment refers only to Officer Reid as the arresting officer. Even if the arrest was jointly made, the court holds that Officer Bender was entitled to rely upon information communicated to him by Officer Reid in assisting in Mr. Carroll's arrest. Thus, the court concludes that both Officer Reid and

11

Officer Bender are entitled to qualified immunity with respect to Mr. Carroll's section 1983 claim for false arrest.

"To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). That court went on to say, "Wood has not shown that Kesler acted without probable cause, which is a required element of Wood's § 1983 malicious prosecution claim." 323 F.3d at 882. Although that statement seems to imply that a showing of actual probable cause is necessary for qualified immunity, the statement is actually dicta. The court held that the police officer had qualified immunity because he had actual probable cause for the arrest. Similarly, in Kingsland v. City of Miami, 382 F.3d 1220, 1235 (11th Cir. 2004), the court concluded that "the existence or non-existence of malice and want of probable cause are questions of fact for the jury" but never discussed whether arguable probable cause would be sufficient to invoke qualified immunity.

This court believes that, if clearly confronted with the issue, the Eleventh Circuit would hold that arguable probable cause would cloak a police officer with qualified immunity with respect to a malicious prosecution claim. Consequently, this court holds that Officers Reid and Bender are entitled to qualified immunity on this claim.

12

Alternatively, the court holds that Officers Reid and Bender are entitled to immunity from the plaintiff's malicious prosecution claims because the actions of the Solicitor in deciding to prosecute the case against him broke the chain of causation. *See* Barts v. Joyner, 865 F.2d 1187 (11th Cir. 1989) (the independent decisions of prosecutors, juries, and judges to prosecute, indict, convict, and sentence break the chain of causation for damages that might relate to the original unlawful seizure).

In his complaint, Mr. Carroll also alleges that the defendants violated his due process rights when they interfered with his possessory interests in the Mercedes-Benz vehicle. Pretermiting the questions of whether Mr. Carroll had a protectable interest in the vehicle and whether the actions of the police officers in helping Mr. Kelley repossess the vehicle constituted state action, the court holds that Mr. Carroll has no viable due process claim.

In McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994) (en banc), the Eleventh Circuit held that there is no federal due process violation as long as the state provides a means to remedy the violation. Since Georgia provides a remedy for improper repossession, *see* O.C.G.A. § 11-9-625, Mr. Carroll has no federal due process claim with respect to the repossession of the vehicle.

For the foregoing reasons the court concludes that Officers Reid and Bender, in their individual capacity, have qualified immunity. Consequently, Mr. Carroll's federal claims against them are dismissed with prejudice.

Mr. Carroll also sued Officers Reid and Bender and Police Chief Mac A. Nale in their official capacity. Since Mr. Carroll also sued Henry County, suing the officers and the Police Chief in their official capacity was unnecessary and redundant. *See* Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099 (1985). The plaintiff's claims against Officers Reid and Bender and Police Chief Nale in their official capacity are dismissed.

Although Mr. Carroll's complaint frequently referred to "Defendants" without distinguishing which person committed which acts, the court concludes that, in responding to the defendants' motion for summary judgment, Mr. Carroll has failed to identify any conduct on the part of Police Chief Nale that would state a claim for relief under section 1983. Consequently Chief Nale is entitled to summary judgment on Mr. Carroll's federal claims.

Under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978) a local government may be held liable only if the constitutional torts are the result of official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well settled that it assumes the force of law. 436 U.S. at 694, 98 S.Ct. at 2037-38. Of course, for liability to attach at all, a plaintiff must first show the existence of a constitutional tort. Because Mr. Carroll has failed to show the existence of a constitutional tort, his section 1983 claims against Henry County are dismissed.

With respect to Mr. Carroll's state law claims, the court notes that Mr. Carroll concedes that he is unable to proceed against Henry County and Chief Nale. *See* Plaintiff's Memorandum of Law in Response to Defendants' Motion for Summary Judgment at n. 11. Additionally, Mr. Carroll's state law claims against Officers Reid and Bender are barred since they have official immunity against those claims. Art. I, § II, ¶ IX(d) of the Georgia Constitution provides for official immunity:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

In Merrow v. Hawkins, 266 Ga. 390 (1996), the Georgia Supreme Court held that in the context of official immunity, "actual malice" requires a deliberate intention to do wrong. "Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." Adams v. Hazelwood, 271 Ga. 414, 415 (1999).

This immunity is available to public officials acting in the course of their discretionary capacities. Gilbert v. Richardson, 264 Ga. 744 (1994). This court holds Officers Reid and Bender were performing an official discretionary function when they arrested Mr. Carroll. Moreover, the court concludes that the facts before the court, construed in the light most favorable to Mr. Carroll, fail to show that Officers Reid and Bender acted with the intent to do something wrong or illegal.

For all the foregoing reasons, the court concludes that the defendants are entitled to summary judgment on all of the plaintiff's claims. The motion for summary judgment [Doc. No. 65] is GRANTED. The clerk will enter judgment dismissing the plaintiff's claims with prejudice.

SO ORDERED, this 23rd day of January, 2006.

ROBERT L. VINING, JR.
Senior United States District Judge